SMITH *against* PORTER and others executors of SMITH. *Wednesday, March 25th.*

THIS cause was originally instituted in the Common Pleas of *Montgomery* county, from whence it was removed to the Circuit Court by *habeas corpus*. It was an action of assumpsit to recover a debt due by the defendant's testator, to which the defendants pleaded non assumpsit and payment, and the *Act of limitations*, and the plaintiff replied in the usual form. At the trial in the Circuit Court, the jury found the following special verdict; " And now, to wit *June* 3d 1805, a jury being " called come &c. who being duly sworn and affirmed do say, " they find on the pleas of non assumpsit and payment for the " plaintiff, and assess damages at 167*l*. 3*s*. 8*d*. On the plea of " the *Act of limitations* they find that there was no acknowledg- " ment or promise to pay by the testator or executors within " six years before the action brought. But the testator by his " will dated the 23d *May* 1800, ordered and directed, *prout* " the will. (The clause referred to being in these words ' *I* " *order and direct all my just debts and funeral expences to be* " *paid*.') But whether by law the words and directions of the " said will are a sufficient assumption and acknowledgment to " take the case out of the operation of the Act of limitations or " not, the jury cannot say, but refer the decision thereof to the " court. If the court shall be of opinion that the words and di- " rections of the said will take the case out of the operation of " the Act of limitations, then the jury assess the damages as " above, with six pence costs. But if the court shall be of opin- " ion that the said Act of limitations is a bar to the plaintiff's " recovery, notwithstanding the words and directions of the said " will, then the jury find for the defendants, unless the plaintiff " shall elect to suffer a nonsuit."

A debt which is barred by the Act of limitations, is not revived by a clause in a will ordering all the testator's just debts to be paid.

It was agreed by the counsel, that the question of law arising out of the special verdict should be argued in bank, in the first instance, and accordingly the case was removed by appeal, as from a decision of the Circuit Court.

*Milnor* for the plaintiff. The debt is due in conscience, and although barred by the statute, it is revived by the order to pay all his just debts. We proceed here upon the same principles

which govern courts of equity, where it has often been held that such a testamentary provision takes the case out of the statute. In *Andrews* v. *Brown* (a) it was held that if a debtor makes his will and directs that all his debts shall be paid, *or makes any provision for the payment of his debts in general,* the debt is revived, and is brought out of the statute; and in *Lacon* v. *Briggs,* (b) though Lord *Hardwicke* appears not to like the doctrine, yet he admits it is the established rule in equity, that where there is a trust of real estate for payment of debts, it revives debts barred by the statute of limitations. Lord *Mansfield* approved the principle, and said that even a court of law upon a proper case would say that if a man devises his estate for the payment of his debts, all debts barred by the statute should share the benefit of the devise. *Trueman* v. *Fenton.* (c) An anonymous case in *Salk.* 154. is to the same point; and all the cases go upon the ground that the debts still exist in equity, and the duty remains; the statute has not extinguished that, though it has taken away the remedy; and of course where there is a provision for payment of debts, a debt upon which the statute has run is within the provision equally with any other debt. *Gofton* v. *Mill.* (d) It is necessary to give some operation to the words adopted by the testator in this case; and if they have not this effect they have none. A direction to pay debts is at least as effectual in this particular as a trust to pay them.

*Frazer* and *Porter* for the defendants. The amount of the *English* cases is, that where a trust is created by will for the payment of debts, those barred by the statute are included; but they go no further. The point cited from *Andrews* v. *Brown* was not the point decided, it was the argument of the court; it was also Lord *Mansfield's* argument in *Trueman* v. *Fenton.* In *Lacon* v. *Briggs* there was a trust created by Lord *Bradford's* will for the payment of his debts; so also in *Gofton* v. *Mill,* and in the anonymous case from *Salkeld;* in fact there has been no pretence in any case to exceed this limit. Even this has excited the murmurs of the most respectable judges in

(a) *Precedents in Chan.* 385.
(b) 3 *Atk.* 107.
(c) *Cowp.* 548.
(d) 2 *Vern.* 141. 4 *Bac. Abr.* 484. 6 *Com. Dig.* 344.

*England;* and it is very difficult to assign any reason for it, unless we take that which is assigned by the master of the rolls in *Norton* v. *Turvill,* (a) that trust estates are not within the statute. The case of the Earl of *Strafford* v. *Blakeway* in the house of Lords has very much shaken all the decisions in equity, even in these cases of devises in trust, 3 *Bro. Parl. Ca.* 305.; so much so that Lord *Hardwicke* said he was very glad that the cause of *Oughterloney* v. *Powis* did not turn on the question whether the demand, which was barred by the statute of limitations, was revived by the trust, for he should be under some difficulty to determine it after the case of Lord *Strafford; Ambl.* 231.; and in a case which soon after this of Earl *Strafford* came before Lord Chancellor *King,* where the lapse of time from the commencement of the debt had been considerable, although the testator had willed his executors to pay his debts, he allowed the plea of the statute. *Legastick* v. *Cowne.* (b) But the decisions have at no time gone the length of the plaintiff's argument. Here the order was entirely useless; the law would have done the same without it, as far as lands and personalty would go; and the devise may be considered as merely void. 3 *P. Wms.* 90. *Cox's quære.*

Tilghman C. J. delivered the opinion of the court.

This case comes before the court on a special verdict; and the single question is whether a debt due on account, and barred by the act of limitations, is revived by the following clause in the will of *Robert Smith:* " I order and direct all my " just debts and funeral expenses to be paid." Clauses of this kind are very usual in last wills. It is a form of old standing, probably introduced from *English* precedents. There are some countries in which it now is, or heretofore may have been useful to direct the payment of debts in a man's will, because it may tend to make certain kinds of property subject to the payment, which otherwise would not have been so. But in *Pennsylvania* it is altogether unnecessary, because without such direction the whole property of the testator real and personal, must be applied to the payment of his debts. To give this direction the largest import which it can bear, it is no more than the desire of the testator expressed to his executor, that

*(a)* 2 *P. Wms.* 144.                    *(b)* *Mosely* 391.

his just debts shall be paid. Whether the debts are just or not must be left to the judgment of the executor before he makes a voluntary payment; and if upon a candid examination he thinks a debt not justly due, it would be doing violence to the words of the testator, so to construe them, as to deprive the executor of the legal means of defence by pleading the act of limitations. But an executor is not allowed to plead that act against a just debt: on the contrary if he knows it to be just, I think it is as dishonest in him to use that plea, as it would be in the case of his own debt. Considering, therefore, the clause in question according to its obvious meaning, without regard to judicial decisions, it cannot be said that it revives a debt barred by the act of limitations.

But as this Court is bound by the authority of cases adjudged by their predecessors, it becomes necessary to inquire what decisions have been made.

Some period for the limitation of actions is necessary for the peace of society. I believe that in all enlightened countries regulations for the purpose have been adopted. Like all other good things, they are liable to abuse; and the indignation which is excited in honest bosoms at an attempt to evade payment of a just debt, by a legal subterfuge, has sometimes produced decisions which, although not now to be contradicted, are scarcely to be reconciled to reason. The slightest acknowledgments of debt, though very far from any thing like a promise, have been held to be evidence sufficient to justify a jury in finding that there was an actual promise. But the industry of the plaintiff's counsel has not produced a single case in which it has been decided, that a direction in a will like the present revives a debt barred by the statute. It was several times determined between the years 1690 and 1726, that where a testator creates a fund in trust to pay his debts, the creditors barred by the statute shall come in equally with others. In the year 1727, however, the House of Lords in *England*, reversed a decree which was founded on this principle in the case of *Blakeway* v. *The Earl of Strafford*, 3 *Bro. Par. Ca.* 305. In the year 1744, Lord *Hardwicke* states the rule to be, that debts barred by the statute shall be paid out of a trust fund of lands created for payments of debts, although he declares that he does not see any good reason for it. 3 *Atk.* 107. But in 1754, he says, that this principle has been a good deal shaken by the decree of the

House of Lords in Lord *Strafford's* case, and that if the case before him had turned upon that point he should have taken time to consider it. *Amb.* 231. In the case of *Legastic* v. *Cowne* in 1730, *Moseley* 391. it was expressly decided that the plea of the statute of limitations is a good bar in a case where a testator *ordered his debts to be paid.* This case is reported by *Mosely* who does not stand high in reputation; it is probable however that the decision was made as reported, because it was but three years after the decision in the house of Lords in Lord *Strafford's* case, and seems to have been founded on it.

In our own courts, I know of no decision on the point in question, although I understand that on more than one occasion intimations have fallen from different judges unfavourable to the revival of the debt; but as no decision was made, it would not be proper to give weight to these intimations. In point of authority then the matter stands thus: there is one decision on the point that the act of limitations is a bar, notwithstanding the direction to pay all just debts; and there is no express decision to the contrary. This being the case, and feeling no inclination to go beyond the principles that have been established, I think myself bound to say that I do not conceive the direction by *Robert Smith* to pay his just debts, can be fairly construed so as to deprive his executors of the right to plead the act of limitations in such cases as they think proper.

I am therefore of opinion that a nonsuit be entered according to the agreement of the parties, the plaintiff having elected to enter a nonsuit instead of judgment for the defendants.